**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Edwin Ocasio and** | : | **CIVIL ACTION** |
| **Marisol Ocasio, h/w** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **James Ollson and** | : | |
| **Grand Rapids Transport, Inc.,** | : | |
| **Defendants.** | : | **NO. 05-6219** |

## Memorandum and Opinion

L. FELIPE RESTREPO                                                    JANUARY 16, 2009
UNITED STATES MAGISTRATE JUDGE

Before the Court is a motion for partial summary judgment on the basis of collateral estoppel brought by Defendants, James Ollson and Grand Rapids Transport, Inc., and their attached memorandum of law in support thereof (Doc. No. 36), along with the response (Doc. No. 40) and memorandum of law in opposition thereto of Plaintiffs Edwin and Marisol Ocasio (Doc. No. 41).

Also before the Court is Defendants' motion *in limine* to preclude Plaintiff from claiming injuries not described in his Workers' Compensation compromise and release agreement and the attached memorandum of law in support thereof (Doc. No. 37), and Plaintiffs' response (Doc. No. 39) and memorandum of law in opposition thereto (Doc. No. 42).

The final item pending before the Court is Plaintiffs' motion *in limine* to exclude evidence or testimony of the Workers' Compensation claim (Doc. No. 34), memorandum of law in support thereof (Doc. No. 35), and Defendants' response in opposition thereto (Doc. No. 38). For the reasons which follow, Defendants' motions are denied and Plaintiffs' motion is granted in part and denied in part.

## 1. Background

The facts, viewed in the light most favorable to Plaintiffs, are as follows:[1]

On December 4, 2003, "while in the course and scope of his employment with Advanced Food Products," Plaintiff Edwin Ocasio ("Plaintiff")[2] was operating a forklift to load a tractor-trailer owned by Defendant Grand Rapids Transport, Inc. and operated by Defendant James Ollson.  See Pl.'s Mem. 1; Def.'s Mem. 10.  Plaintiff's employer noticed that an incorrect product had been placed in the tractor-trailer and requested that he remove the incorrect product and reload the tractor-trailer.  Pl.'s Mem. 1.  Defendant Ollson was notified that the tractor-trailer needed to be reloaded.  Id.  At some point, Defendant Ollson began to pull away from the loading dock at the same time that Plaintiff was exiting the tractor-trailer in his forklift.  Id. at 1-2; Def.'s Mem. 10.  Plaintiff's forklift then fell between the loading dock and the rear of Defendant Ollson's tractor-trailer, which resulted in injuries to Plaintiff.  Pl.'s Mem. 2; Def.'s Mem. 10.

Plaintiff attempted to return to work, "with restrictions," but could not continue working after January 15, 2004.  Pl.'s Mem. 2.  On January 20, 2004 a Notice of Compensation Payable was issued by the Bureau of Workers' Compensation, describing Plaintiff's injury as a "Lumbar Disc Injury."  Pl.'s Mem. 2; Def.'s Mem. Ex. A.  At some point on or around October 21, 2004, Plaintiff's employer filed a Petition to Suspend Workers' Compensation benefits ("Suspension

---

[1]As explained below, when considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted).

[2]In the third cause of action listed in the Complaint, Plaintiff Marisol Ocasio asserts a claim for loss of consortium, which is unrelated to the motions pending before the Court.  See Compl. ¶¶ 23-25 (Doc. No. 1).  For the sake of consistency, the Court will hereinafter refer to Mr. Ocasio only.

Petition") through its third-party administrator.  Pl.'s Mem. 2; Def.'s Mem. 11.  The Workers'

Compensation Court held hearings in front of a Workers' Compensation Judge ("WCJ"), but

before the litigation reached its completion, Plaintiff and his employer entered into a Compromise

and Release Agreement ("C&R") on November 3, 2005, which was presented to the WCJ for

approval.  Pl.'s Mem. 2; Def. Mem. 11; see also Def.'s Mem. Ex. B.

      In Paragraph 4 of the C&R, Plaintiff's injuries were summarized as "Strain/sprain of low

back and right hip.  This is a full and final settlement, without limitation or reservation, of any and

all injuries sustained by Claimant as a result of his employment with Advanced Food Products,

regardless of how the injury is described."  Def.'s Mem. Ex. B ¶ 4.  In Paragraph 9, the C&R

further required Plaintiff's employer to "be responsible for payment for implantation of a

permanent spinal cord stimulator."  Id. ¶ 9.  Finally, Paragraph 10 mandated that:

> Defendant will continue to pay all related, reasonable, and necessary
> medical expenses incurred for the six (6) month period subsequent to
> the date of the Compromise and Release hearing, including payment
> for Claimant's psychological treatment with Catholic Charities.
> Thereafter, Defendant will have no further liability for any medical
> bills whatsoever.

Id. ¶ 10.  In Paragraph 15, the parties agreed that "the sole issue is whether Claimant understands

the full legal significance of the [C&R]."  Id. ¶ 15.  The parties agreed that the C&R did not

cover the issue of wage loss benefits from October 25, 2004 until the date of the hearing, and

also agreed that the issue of suspension of benefits was reserved for the WCJ.  Id. ¶¶ 15, 18.

      In connection with the C&R, the parties allegedly had the understanding that Plaintiff

would not oppose the Suspension Petition and would refrain from submitting further evidence in

opposition thereto.  Pl.'s Mem. 3.  According to Plaintiff, "the purpose for the agreement was to

allow the third party administrator and employer an opportunity to recover monies from the supersedeas fund which is permissible when petitions for suspension are granted." Id. On November 3, 2005, the WCJ issued a decision which approved the C&R and reserved the right to make a determination on the merits of the Suspension Petition. Def.'s Mem. Ex. C.

With regard to the Suspension Petition, the WCJ heard testimony from Plaintiff's treating psychiatrist, Dr. Frank Muñoz, and Drs. Ross Noble and Gladys Fenichel on behalf of Plaintiff's employer. Pl.'s Mem. 3; Def.'s Mem. Ex. D ¶ 2. Finally, Ms. Scott,[3] a human resources manager for Plaintiff's employer, provided testimony regarding a job that was offered to Plaintiff that fit within the restrictions provided by Dr. Noble, "at the same pay and hours as the claimant's pre-injury wages and hours." Def.'s Mem. Ex. D ¶ 5. Plaintiff refrained from presenting the testimony of his orthopedic surgeon, Dr. Mark Oliveri, when the parties entered into the C&R, because the parties agreed that Plaintiff would not present further medical evidence in opposition to the Suspension Petition. Pl.'s Mem. 3-4; Tr. Oral Arg. 12/23/08, at 38-39.

In her decision, dated November 15, 2005, the WCJ determined that Plaintiff's employer "established its right to a suspension of the claimant's workers' compensation benefits on and after October 25, 2004 . . . ." Def.'s Mem. Ex. D, Concl. of Law ¶ 3. In her findings of fact, the WCJ determined that on October 12, 2004, Plaintiff's employer offered him his pre-injury position, within the restrictions testified to by Dr. Noble, "at the same pay and hours as [his] pre-injury wages and hours." Def.'s Mem. Ex. D ¶ 5. The WCJ further found that Plaintiff suffered

---

[3]Ms. Scott's first name is unclear in that Paragraph 2 of the WCJ's Decision references Jean Scott, while Paragraph 5 references Judy Scott. See Def.'s Mem. Ex. D ¶¶ 2, 5.

from a neuropathy, which is "typically a disease process," and that the neuropathy, and not Plaintiff's injury, explained his "symptoms further down in his lower extremities."  Id. ¶ 10. With regards to Plaintiff's back injuries, the WCJ determined that "without regard to [Plaintiff's] psychiatric and psychological conditions," he could have returned to work on September 9, 2004 but could not lift more than 50 pounds.  Id. ¶ 11.  After considering the testimony from Drs. Muñoz and Fenichel, the WCJ concluded that Plaintiff's medical treatment for his mental impairments were related to the injury, necessary, and reasonably incurred.  Id. ¶¶ 12-24.

Plaintiff initiated the present action against Defendants on December 1, 2005.  See Compl. (Doc. No. 1).  In the Complaint, Plaintiff alleges that he suffered:

> injuries, including but not limited to injury to his back; herniated and bulging discs at levels L2-3, and L5-S1 with right-sided radiculopathy; contusion and strain to his right hip and pelvis; a severe shock to the nerves and nervous system, pain and suffering; severe mental distress and depression; and other injuries, some or all of which may be permanent in nature.

Id. ¶ 12.  Plaintiff also alleges that he has suffered medical expenses, lost employment opportunities, and lost wages.  Id. ¶¶ 13-15.  Defendants argue that "Plaintiff's claims for radiating leg pain, lost wages after October 25, 2004, any loss of earning capacity, medical expenses incurred before May 3, 2006 and workers' compensation lien must be stricken, with prejudice."  Def.'s Mem. 13.

## 2. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248. A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party. Id. at 255; Hugh, 418 F.3d at 267 (citations omitted); see also Crawford v. Beard, 2005 U.S. Dist. LEXIS 887, at *5 (E.D. Pa. Jan. 19, 2005) (citing Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)). Thus, summary judgment is appropriate if this Court determines that, after reviewing the evidence and making all inferences in favor of the non-moving party, there is no genuine issue of material fact to warrant a trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255.

## 3. DISCUSSION

In their motion for partial summary judgment, Defendants contend that, under the doctrine of collateral estoppel, the factual findings made by the WCJ regarding Plaintiff's injuries must be given preclusive effect and the Court must bar the relitigation of those issues in this civil action against Defendants. Def.'s Mem. 13. As noted above, Defendants argue that Plaintiff's claims regarding leg pain, lost wages after October 25, 2004,[4] loss of earning capacity,

---

[4]October 25, 2004 is the date upon which the WCJ determined that Plaintiff's Workers' Compensation benefits should have been suspended because as of that date, his employer offered him work that he could have sustained at the same pay and hours as his pre-injury job. Def.'s

6

medical expenses incurred before May 3, 2006, and any Workers' compensation lien must be barred on collateral estoppel grounds.  Id.

Plaintiff's memorandum of law in opposition to partial summary judgment argues that collateral estoppel is inappropriate because the precise issue decided by the WCJ was not identical to the one presently before the Court.  Pl.'s Mem. 6-7.  Plaintiff further contends that the medical findings regarding the nature and severity of his injuries made by the WCJ were not essential to the judgment made by the WCJ.  Id. at 7-8.  Plaintiff also alleges that the decision rendered by the WCJ did not constitute a final decision on the merits and that there was not a full and fair opportunity to litigate the issues in Workers' Compensation Court.  Id. at 8-11.  For the reasons set forth below, the Court finds that Plaintiff's damages claims are not barred under the doctrine of collateral estoppel because the issue decided by the WCJ is not precisely the same as the issue before this Court; therefore, Defendants' motion for partial summary judgment is denied.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must 'give the same preclusive effect state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'"  Magoni-Detwiler v. Commonwealth of Pennsylvania, 502 F. Supp. 2d 468, 474 (E.D. Pa. 2007), aff'd sub nom., Detwiler v. Bloomingdale, 2008 WL 4356559 (3d Cir. Sept. 25, 2008) (quoting Baker ex rel. Thomas v. GMC, 522 U.S. 222, 246 (1998)).  Collateral estoppel, "otherwise known as issue preclusion," along with res judicata, "are the means through which the federal courts accord prior state judgments preclusive effect."  Morris v. Commonwealth of Pennsylvania Pub. Sch. Employees

_____

Mem. Ex. D. ¶¶ 1, 5, Concl. of Law ¶ 3.

Ret. Sys., 1989 U.S. Dist. LEXIS 12038, at *5 (E.D. Pa. Oct. 10, 1989) (citing Rider v.

Commonwealth of Pennsylvania, 850 F.2d 982, 989 (3d Cir. 1988)).  Under these parameters, an

inquiry into the law of collateral estoppel in Pennsylvania and its application to the facts of the

present case is required.

Four elements must be satisfied in order for collateral estoppel to apply under

Pennsylvania law:

> (1) the issue decided in the previous action must be identical to one
> presented in the later action; (2) the previous action resulted in a final
> judgment on the merits; (3) the party against whom collateral estoppel
> is asserted was a party to the previous action, or is in privity with a
> party to the previous action; and (4) the party against whom collateral
> estoppel is asserted had a full and fair opportunity to litigate the issue
> in the previous action.

Magoni-Detwiler, 502 F. Supp. 2d at 474 (citing Jones v. UPS, 214 F.3d 402, 405-06 (3d Cir.

2000)); see also Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998).  Other courts in the Third

Circuit have required that another "prerequisite" be met in order for collateral estoppel to preclude

relitigation of an issue in a subsequent proceeding:

> That is, in addition to the four elements stated above, courts have
> found that the determination of whether issue preclusion applies also
> depends upon "what was actually raised and decided at the prior
> proceeding, and whether the adjudicator confronted and decided the
> question or merely remarked on it in dicta." Abdulhay v. Bethlehem
> Medical Arts, 425 F. Supp. 2d 646, 656 (E.D. Pa. 2006) (stating fifth
> element of collateral estoppel as requirement that "the determination
> in the prior proceeding was essential to the judgment").  See also
> Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 126 F.3d
> 461, 465, 37 V.I. 526 (3d Cir. 1997) (holding that because prior
> judge's findings were clear dicta, they could not support the
> application of collateral estoppel); Tobler v. Verizon, 2005 U.S. Dist.
> LEXIS 14138, at *13-14 (E.D. Pa. July 13, 2005) (holding that even
> though an arbitrator had previously determined that plaintiff had been
> discharged for cause, such determination was not entitled to collateral

> estoppel effect in a subsequent ERISA proceeding because the reasons for the termination were not essential to the outcome of the arbitration); In re Access Beyond Technologies, Inc., 237 B.R. 32, at *20-21 (Bkrtcy. D. Del. 1999) ("Dicta is not covered by the doctrine of collateral estoppel because [collateral estoppel] requires that the conclusion sough to be given preclusive effect actually formed a necessary part of the ultimate determination reached by the first court.").

Khalil v. Rohm and Haas Co., 2008 U.S. Dist. LEXIS 10169, at *14-15 (E.D. Pa. Feb. 12, 2008). "Defendants, as the parties seeking to effectuate an estoppel, have the burden of demonstrating the propriety of its application." Magoni-Detwiler, 502 F. Supp. 2d at 474 (citing Chisolm v. Def. Logistics Agency, 656 F.2d 42, 50 (3d Cir. 1981)).

"The Pennsylvania Superior Court has held that '[p]rinciples of collateral estoppel apply to judgments of the Workmen's Compensation Appeal Board.'" Khalil, 2008 U.S. Dist. LEXIS 10169, at *12 (quoting Capobianchi v. BIC Corp., 666 A.2d 344, 348 (Pa. Super. 1995)). Furthermore, "[i]n Jones v. UPS, 214 F.3d 402 (3d Cir. 2000), the Court of Appeals for the Third Circuit likewise held that the findings in a Pennsylvania worker' compensation proceeding adverse to the plaintiff had collateral estoppel effect in the plaintiff's later [Americans with Disabilities Act ("ADA")] lawsuit." Khalil, 2008 U.S. Dist. LEXIS 10169, at *13; see also Kauffman v. Werner Enter., Inc., 2006 WL 1340239, at *1-3 (E.D. Pa. May 11, 2006) (holding that the findings of a WCJ in a Workers' Compensation proceeding had collateral estoppel effect in a personal injury case).

In the present case, Defendants have failed to demonstrate satisfaction of the first element of collateral estoppel because the issue decided by the WCJ is not identical to the one presently before the Court.  Defendants analogize Jones, Capobianchi, and Kauffman to the present case to

support the proposition that the issues in the Workers' Compensation proceeding were identical

to those presently before the Court.  Def.'s Mem. 18-19.  However, the specific types of

Workers' Compensation proceedings that took place in those cases were different from the

suspension proceedings which occurred in Plaintiff's case, rendering all three cases readily

distinguishable.

In Capobianchi, the Plaintiff was denied Workers' Compensation benefits after the WCJ

determined that his injuries resulted from degenerative conditions, and not from injuries

sustained after a lighter exploded on him in the workplace.  Capobianchi, 666 A.2d at 346.  The

trial court held that he was precluded from litigating the issue of causation in a subsequent

products liability suit where he alleged the defective lighter caused his injuries, and the Superior

Court of Pennsylvania affirmed because the WCJ had already determined that the cause of his

injuries was his degenerative condition.  Id. at 345-46, 349.

The Plaintiff in Jones was a delivery man who received Workers' Compensation benefits

after he injured himself when he slipped on ice.  Jones, 214 F.3d at 403.  At some point, he was

cleared to resume his position as a delivery man but refused to do so, resulting in his employer

filing a petition to terminate his benefits.  Id.  After holding that the Plaintiff had "fully recovered

from his work injury," the WCJ terminated benefits.  Id.  In his subsequent ADA lawsuit, the

District Court did not reach the issue of collateral estoppel, holding instead that Plaintiff failed to

establish that he was a "qualified individual under the ADA."  Id. at 404-05.  On appeal, the

Third Circuit held that Plaintiff was precluded from relitigating the fact that he was "fully

recovered" from his accident under the doctrine of collateral estoppel, and thus his ADA claim

failed as a matter of law.  Id. at 406.

Initially, the facts of <u>Kauffman</u> might seem quite similar to those of the present case.  The Plaintiff in <u>Kauffman</u> was an employee driving his employer's pickup truck when defendant, driving a car owned by his employer, struck him, causing injuries to his head, neck, and low back.  <u>Kauffman</u>, 2006 WL 1340239, at *1.  Plaintiff initially received Workers' Compensation benefits, but plaintiff's employer later "filed a petition to terminate" the benefits, alleging that he was "fully recovered."  <u>Id.</u>  Plaintiff filed his own petition to amend "the description of his injuries" to include certain herniated discs.  <u>Id.</u>  The WCJ heard testimony from both Plaintiff's orthopedist and one chosen by his employer and found that Plaintiff did not have any herniated discs; additionally, the WCJ found he was able to return to work and terminated his benefits.  <u>Id.</u>  Plaintiff appealed the WCJ's opinion, but the appeal was never resolved because a C&R was entered into between Plaintiff and his employer.  <u>Id.</u>

Plaintiff then filed suit against the tortfeasor, alleging a host of injuries, including herniated discs and loss of earning capacity.  <u>Id.</u>  Defendants filed a motion for partial summary judgment, arguing that the claims for herniated discs, injuries after the date the WCJ determined plaintiff was "fully recovered," lost wages after that date, and "loss of earning capacity" were precluded from relitigation under the doctrine of collateral estoppel.  <u>Id.</u> at *1-2.  The District Court granted the motion for partial summary judgment, and ordered the contested claims to be stricken.  <u>Id.</u> at *3.  With regard to the first prong of collateral estoppel, the court held that the issues concerning "herniated discs, ongoing injuries, lost wages . . ., and earning capacity" were identical to those presented in the tort case.  <u>Id.</u>

A comprehensive review of these cases reveals that they are inapposite to the present case because the precise issue that was determined by the WCJ in the suspension proceedings is

11

distinct from the issues in this litigation.  Both Jones and Kauffman involved Termination

Petitions in the Workers' Compensation Court, whereas the instant case involves a Suspension

Petition.  This is not a distinction without a difference.  Indeed, the Commonwealth Court of

Pennsylvania has stated that "the suspension of benefits is justified only where claimant has

returned to work earning his pre-injury wages, or employer has submitted proof in the form of an

actual job offer, evidence of suitable available jobs or expert testimony as to earning capacity,

establishing that the work injury no longer effects claimant's earning power."  Brandywine

Mazda Suzuki and Inservco v. Workers' Comp. Appeal Bd. (Asman), 872 A.2d 253, 256 (Pa.

Commw. Ct. 2005) (citing Martin v. Workers' Comp. Appeal Bd. (Red Rose Transit Auth.), 783

A.2d 384, 391 (Pa. Commw. Ct. 2001)); see also Martin, 783 A.2d at 391 (citing Vista Int'l

Hotel v. Workmen's Comp. Appeal Bd. (Daniels), 560 Pa. 12, 742 A.2d 649 (Pa. 1999)).

　　　For purposes of comparing Jones and Kauffman and determining the application of

collateral estoppel to the findings of the WCJ in Plaintiff's suspension proceeding, it is essential

to note that the "[e]mployer's burden of proof is different in a termination proceeding than it is in

a suspension proceeding."  Foyle v. Workmen's Comp. Appeal Bd., 635 A.2d 687, 689 (Pa.

Commw. Ct. 1993).  In order to prevail in a termination proceeding, the employer bears the

burden of proving "that the claimant's work-related disability has *entirely ceased* . . . but need

not show availability of work."  Id. at 689-90 (citing Rogers Motor Lines v. WCAB (Baker), 601

A.2d 934 (Pa. Commw. Ct. 1992); Laird v. Workmen's Comp. Appeal Bd. (Michael Curran and

Assoc.), 585 A.2d 602 (Pa. Commw. Ct. 1991)) (emphasis in original).  To contrast,

"[s]uspension is warranted if the employer shows there is a job available to the claimant at

earnings equal to the claimant's pre-injury earnings and which the claimant is capable of

performing **despite a continuing medical disability**."  Foyle, 635 A.2d at 689 (citing Zimcosky

v. Workmen's Comp. Appeal Bd. (United States Steel Corp.), 544 A.2d 1106 (Pa. Commw. Ct.

1988)) (emphasis added).

　　　　Relying on the above case law, Plaintiff asserts that "the only issue properly before the

Judge was whether the employer had presented sufficient evidence to demonstrate that a job was

available which fit the occupational category for which the Claimant had been given medical

clearance," and that "[t]here was clearly no need for the Judge to make any findings with regard

to clinical findings on examination or diagnosis."  Pl.'s Mem. 7.  Plaintiff further points out that,

under the Workers' Compensation Act, "modification, reinstatement, suspension or termination"

are permitted "at any time," and since disability is not "static," under the Act, nothing would

prevent a claimant from seeking reinstatement after a Suspension Petition were granted.  Id. at 7-

8 (citing Dillon v. WCAB (Greenwich Collieries), 640 A.2d 386, 391 (Pa. 1994)).  Plaintiff

argues that the clinical findings made by the WCJ  were not the actual issues being decided in the

suspension proceeding and were not essential to the judgment as to whether a job existed at the

same rate of pay within Plaintiff's medical restrictions; and as such, Plaintiff contends that the

WCJ's findings cannot be given preclusive effect.  Pl.'s Mem. 8.

　　　　Plaintiff's employer filed a Suspension Petition in this case because it argued that there

was a job that Plaintiff could have performed; specifically, his employer alleged that it had

offered him his pre-injury position "within [his] restrictions" and "at the same pay and hours as

[his] pre-injury wages and hours."  Def.'s Mem. Ex. D ¶¶ 1, 5.  It is evident that the issue decided

by the WCJ was whether the job offered to Plaintiff by his employer fell within his medical

restrictions and provided the same pay as his pre-injury job, thus entitling his employer to

suspension of benefits "**despite a continuing medical disability**."  See Foyle, 635 A.2d at 689 (citation omitted) (emphasis added).  As noted by Plaintiffs' counsel at oral argument, it is possible that a Workers' Compensation claimant subject to a suspension proceeding, such as Plaintiff, might experience no improvement in his condition, but that a job could become available within his restrictions and at the same pay as his pre-injury job that was not available when he was first awarded benefits.  Tr. Oral Arg. 12/23/08, at 36.  It is also possible that the employer could offer the employee his pre-injury position after tailoring or altering the duties of the position to fit within the employee's restrictions.  Clearly the precise issue confronting the WCJ at Plaintiff's suspension proceeding was different than that being decided in the instant litigation.  The issue currently before the Court is whether the Defendants caused Plaintiff's injuries, and if so, what injuries Defendants should be liable for.

The difference between termination and suspension proceedings further distinguishes Capobianchi, Jones, and Kauffman from the instant litigation.  Capobianchi, as noted above, involved a proceeding to determine whether the claimant was entitled to benefits; as such, it would only make sense to give preclusive effect to a judgment that the workplace accident did not cause the claimant's injuries.  See Capobianchi, 666 A.2d at 346.  Jones and Kauffman both involved termination proceedings, at which it was the employer's burden to prove that the claimant was no longer disabled.  See Jones, 214 F.3d at 403; Kauffman, 2006 WL 1340239, at *1; Foyle, 635 A.2d at 689-90.  As a result, the determination of the extent, existence, and continuing nature of the claimants' injuries in those proceedings were in fact the precise issues being decided by the WCJs.  In the present case, however, the WCJ was merely determining whether the job offered to Plaintiff fit within his limitations and offered him pay equal to his pre-

injury earnings despite any alleged disability he may or may not still have been suffering from. As a result, the WCJ's clinical findings did not constitute a decision on an issue identical to the one presently before the Court and the language in the WCJ's decision cannot be given preclusive effect.  Therefore, the Court will not preclude Plaintiff's injury claims on the basis of collateral estoppel.

Defense counsel argued that, even under the Court's rationale, Plaintiff's lost wages and employment opportunities claims should still be precluded unless there is a finding that his condition later worsened, because the WCJ found that as of October 25, 2004 Plaintiff's employer was entitled to suspension of benefits.  Tr. Oral Arg. 12/23/08, at 14-15.  In this regard, the Workers' Compensation Act ("Act"), as noted by Plaintiff, allows for modification and reinstatement of benefits, indicating that the Act contemplates that the job-related effects of Plaintiff's injuries, found by the WCJ **at the time of her decision**, could change over time.  See 77 P.S. § 772; Pl.'s Mem. 7; Tr. Oral Arg. 12/23/08, at 43-44; see also Dillon, 640 A.2d at 391 (noting that "determinations of the status of an injured employee's disability are subject to change").  Therefore, a finding that, at the time the WCJ's decision was made, suspension of benefits was proper, does not mandate the conclusion that Plaintiff could never be entitled to reinstatement of benefits due to a loss of earning power at some later point.  See Brandywine Mazda Suzuki, 872 A.2d at 256; 77 P.S. § 772.  As a result, the Court does not find any reason to preclude relitigation of the issue of future earnings losses on the basis of collateral estoppel.

Because the Court finds that Defendants have failed to satisfy the first element of the collateral estoppel analysis, it is unnecessary to address the remaining elements.  As a final note, the application of collateral estoppel implicates important public policy concerns that bear

mentioning with respect to the present case.

The Commonwealth Court of Pennsylvania has considered whether preclusive effect could be given to a WCJ's determination that a claimant fully understood her decision to enter into a C&R and that claimant was represented by her counsel of choice at the initial Workers' Compensation proceedings.  <u>Stiles v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare)</u>, 853 A.2d 1119, 1120-22, 1124 (Pa. Commw. Ct. 2004).  In rendering its decision that collateral estoppel applied, the Commonwealth Court specifically noted that the decision seemed proper in light of the "strong public polic[ies] favoring voluntary settlements and finality."  <u>Id.</u> at 1124.  To find that collateral estoppel applies under the present facts could potentially have the effect of **discouraging** settlements in Workers' Compensation Court.  In essence, such a holding could suggest to claimants subject to suspension proceedings that they must fully litigate every minute issue against their employers in order to avoid being precluded from claiming their full range of damages in a later civil suit against the actual person who caused the injury.  Moreover, because the Suspension Petition below involved the limited issue of whether Plaintiff could perform the job that his employer allegedly offered him **at the time the WCJ's decision was rendered**, the Court finds that today's decision does not offend the strong interest in finality of judgments.

For the aforementioned reasons, the Court finds that collateral estoppel does not preclude the relitigation of Plaintiff's injuries regarding leg pain, lost wages after October 25, 2004, loss of earning capacity, medical expenses incurred before May 3, 2006, and any Workers' compensation lien.  Consequently, Defendants' partial motion for summary judgment is denied.

16

#### 4. Defendants' Motion *in limine*

Defendants have filed a similar, interrelated motion *in limine*, requesting that the Court preclude Plaintiff from claiming injuries that are not described in the C&R.  See Def.'s Mot. 2 (Doc. No. 37).  Defendants argue that Plaintiff should be restricted to claims for "strain/sprain of low back and right hip."  Def.'s Mem. 7 (Doc. No. 37).  Defendants assert that, because Plaintiff entered into a C&R with his employer which made certain descriptions of his injuries, he should be judicially estopped from claiming any additional injuries in this subsequent tort claim.  Id. at 7-8.  Plaintiff argues that these injury claims are not inconsistent with the injuries described in the C&R; in doing so, counsel for Plaintiff urged at oral argument that to accept Defendants' argument would require the Court to read the language of the C&R in a vacuum.  Pl.'s Mem. 4-5 (Doc. No. 42); Tr. Oral Arg. 12/23/08, at 24-25.  The Court agrees.  Because the language of the C&R is not limited to the injuries Defendants suggest when read as a whole and under the relevant circumstances, judicial estoppel is inappropriate and Defendants' motion *in limine* is denied.

This Court has jurisdiction over the present action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).  See Compl. ¶ 5; 28 U.S.C. § 1332(a)(1).  The Third Circuit has left open the question as to whether "federal or state law governs issues of judicial estoppel in diversity cases."  Curiale v. Tiber Holding Co., 1997 U.S. Dist. LEXIS 14563, at *22 (E.D. Pa. Sept. 18, 1997) (citing Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 n. 2 (3d Cir. 1996)).  The question of whether federal or state law governs the application of judicial estoppel to the present case is immaterial, because judicial estoppel is inappropriate

17

under both bodies of law.  See Curiale, 1997 U.S. Dist. LEXIS 14563, at *22; see also In re Chambers Dev. Co., Inc., 148 F.3d 214, 229 n. 13 (3d Cir. 1998) (citing Ryan Operations, 81 F.3d at 359 n. 2) (noting the apparent "question as to whether state judicial estoppel law or federal judicial estoppel law applies in a diversity action" as discussed by one panel member in Ryan Operations, but leaving the issue unresolved because the parties did not "dispute" an earlier ruling that "New Jersey and the federal judicial estoppel rules are consistent." ).

The Third Circuit "first articulated the doctrine of judicial estoppel in Scarano v. Central R. Co. of N.J., 203 F.2d 510 (3d Cir. 1953)."  Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003).  "When properly invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency."  Montrose Med. Group, 243 F.3d at 779.  The proper application of judicial estoppel by a district court requires satisfaction of three requirements.  Id.  The first requirement is that "the party to be estopped must have taken two positions that are irreconcilably inconsistent."  Montrose Med. Group, 243 F.3d at 779 (citing Ryan Operations, 81 F.3d at 361).  Second, the Third Circuit has held that "judicial estoppel is unwarranted unless the party changes his or her position 'in bad faith-i.e., with intent to play fast and loose with the court.'"  Montrose Med. Group, 243 F.3d at 779 (citing Ryan Operations, 81 F.3d at 361).  Third, "a district court may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct."  Montrose Med. Group, 243 F.3d at 779 (citing Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 108 (3d Cir. 1999)).

Since judicial estoppel is an "extraordinary remedy," the Third Circuit has noted that it

18

should only be utilized "'when a party's inconsistent behavior would otherwise result in a miscarriage of justice.'" Schlegel v. Berks Area Reading Transp. Auth., 2003 U.S. Dist. LEXIS 1260, at *6 (E.D. Pa. Jan. 9, 2003) (quoting Montrose Med. Group, 243 F.3d at 784); see also Ryan Operations, 81 F.3d at 365 (citation omitted).   "Judicial estoppel is . . . not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Krystal Cadillac-Oldsmobile, 337 F.3d at 319 (citing In re Chambers Dev. Co., Inc., 148 F.3d at 229); see also In re Chambers Dev. Co., Inc., 148 F.3d at 229 (quoting Ryan Operations, 81 F.3d at 358).   Finally, the Third Circuit has "noted that equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position." Krystal Cadillac-Oldsmobile, 337 F.3d at 320 (citing Montrose Med. Group, 243 F.3d at 780).[5]

In Pennsylvania, "a party to an action is judicially estopped from assuming a position inconsistent with his or her assertion in a previous action if his or her contention was successfully maintained." Morris v. South Coventry Twp. Bd. of Supervisors, 898 A.2d 1213, 1218 (Pa. Commw. Ct. 2006) (citing Trowbridge v. Scranton Artificial Limb Co., 747 A.2d 862 (Pa.

_____

[5]There is a different standard for the application of judicial estoppel in the context of whether a plaintiff can "survive summary judgment" after asserting one position "in a prior proceeding" and then asserting an inconsistent position in subsequent litigation.  Detz v. Greiner Industries, Inc., 346 F.3d 109, 115 (3d Cir. 2003) (citing and analyzing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 807 (1999)); see also Detz, 346 F.3d at 115 (citing Motley v. N.J. State Police, 196 F.3d 160, 164-66 (3d Cir. 1999) (noting that Motley applied the Cleveland test to the application of judicial estoppel in the context of a motion for summary judgment)). Under these circumstances, to decide whether to apply judicial estoppel, the Court "must determine whether a plaintiff's assertions are genuinely in conflict, and then evaluate that plaintiff's attempt to explain away the inconsistency."  Detz, 346 F.3d at 118 (citations omitted). In the present case, Defendants raise the issue of judicial estoppel in the context of a motion *in limine*, so even though this motion is related to Defendants' motion for partial summary judgment, it appears that the Third Circuit's original test for judicial estoppel should apply.  See Def.'s Mot. 2.  However, the Court need not resolve this issue because, as discussed below, Defendants' argument fails under both federal tests and the state test for judicial estoppel.

2000)).  Judicial estoppel is dependent upon the party's relationship "to one or more tribunals, rather than on relationships between parties."  <u>Morris</u>, 898 A.2d at 1218 (citations omitted).  The Supreme Court of Pennsylvania has determined that state appellate courts must review the propriety of a trial court's application of judicial estoppel for two factors: first, whether the party has in fact asserted a position inconsistent with one previously asserted; and second, whether the position was "successfully maintained."  <u>Id.</u> at 1219 (citing <u>In re S.A.J.</u>, 838 A.2d 616, 621 (Pa. 2003)).

The Commonwealth Court of Pennsylvania has had occasion to review the application of judicial estoppel to assertions made in a C&R in a Workers' Compensation proceeding.  <u>See Wallace v. Workers' Comp. Appeal Bd. (Bethlehem Steel/PA Steel Tech.)</u>, 854 A.2d 613, 618-20 (Pa. Commw. Ct. 2004).  In <u>Wallace</u>, the Commonwealth Court noted that the claimant entered into a C&R which claimed injury due to inhalation and provided no other notice of additional injuries, but then later asserted that he had a back injury.  <u>Id.</u> at 619.  The <u>Wallace</u> Court noted that, while the statements were inconsistent, it was required "to further assess whether Claimant had the opportunity to proffer a sufficient explanation for his contradiction."  <u>Id.</u> (citing <u>In re S.A.J.</u>, 838 A.2d at 622).  The Court found that judicial estoppel was inappropriate under the circumstances because the claimant testified that his attorney "advised him that [the C&R] did not affect his back injury claim."  <u>Id.</u> at 619-20.

In the present case, it is unnecessary to determine whether federal or state judicial estoppel rules are controlling in this diversity case, and it is further unnecessary to definitively determine which federal test is appropriate.  Judicial estoppel is inappropriate under all potentially applicable bodies of law, because Plaintiff has not asserted a position in this Court

which is contrary to nor inconsistent with the description of his injuries that was contained in the

C&R.  To constrain Plaintiff to the limited injury claims that Defendants suggest would require

the Court to ignore important language contained in the C&R and would also require the Court to

consider the language of the C&R in a vacuum.

Paragraph 4 of the C&R describes Plaintiff's injuries as "Strain/sprain of low back and

right hip.  This is a full and final settlement without limitation or reservation, of any and all

injuries sustained by Claimant as a result of his employment with Advanced Food Products,

**regardless of how the injury is described**."  See Def.'s Mot. Ex. B ¶ 4 (Doc. No. 37-4)

(emphasis added).  Next, in Paragraph 9, Plaintiff's employer agreed to pay for the "implantation

of a permanent spinal cord stimulator."  Id. ¶ 9.  Finally, in Paragraph 10, Plaintiff's employer

agreed to pay "all related, reasonable, and necessary medical expenses incurred for the six (6)

month period subsequent to the date of the Compromise and Release hearing, including payment

for Claimant's psychological treatment with Catholic Charities."  Id. ¶ 10.

Reading the C&R as a whole, it is evident that Plaintiff has not maintained an

inconsistent position in this litigation, especially considering the circumstances at the

proceedings before the Workers' Compensation Court.  Plaintiff refrained from presenting all of

his evidence in an effort to resolve the dispute with his employer and expedite his receipt of

benefits.  Tr. Oral Arg. 12/23/08, at 12-13.  The language included in Paragraph 4, noting that the

settlement was for all injuries, "regardless of how . . . described," indicates that the injuries

specifically listed in the C&R were not necessarily exclusive.  Furthermore, it would defy logic

to say that Plaintiff did not have more than a back strain or sprain when his employer agreed to

pay for the implantation of a spinal cord stimulator.[6]

Under these circumstances, Plaintiff has not asserted a position in this litigation which is contrary to nor inconsistent with the language contained in the C&R.  Therefore, Defendants' judicial estoppel argument fails under the first prong of all the aforementioned tests for judicial estoppel.  As such, it is unnecessary to examine the other requirements of judicial estoppel under federal and state law.  It is clear that, taking all language contained in the C&R as a whole, and considering this language in its proper factual context, Plaintiff merely released his employer from further liability regardless of the description of his injuries.  To later file a damages claim for all of the injuries that he allegedly sustained against Defendants is not an example of a litigant playing "fast and loose" with the judicial system, and judicial estoppel is not appropriate. Because Plaintiff has not asserted an inconsistent position in this Court, Defendants' motion *in limine* is denied.

### 5. PLAINTIFFS' MOTION *IN LIMINE*

The final motion which concerns Plaintiff's Workers' Compensation proceedings has been brought by Plaintiffs, alleging that Defendants should be precluded from introducing testimony, evidence, or arguments to the jury concerning the Workers' Compensation claim or settlement.  Pl.'s Mot. 1 (Doc. No. 34).  Plaintiff argues that the collateral source rule allows recovery from both Workers' Compensation and the tortfeasor, and that under Federal Rule of

---

[6]Defense counsel conceded at oral argument that Plaintiff has a valid claim for his psychological injuries for the six month period that his employer was required to pay for his treatment, as counsel for Defendants indicated willingness to be bound by Paragraphs 9 and 10 of the C&R.  Tr. Oral Arg. 12/23/08, at 20-21.

Evidence 403 and the relevant case law, any mention of Plaintiff's Workers' Compensation claim will create prejudice to Plaintiff that substantially outweighs its probative value.  Id. ¶ 3.  In their memorandum of law, Defendants reiterate their judicial estoppel argument to assert that they are entitled to cross examine Plaintiff regarding his inconsistent statements.  Def.'s Mem. 6-7 (Doc. No. 38).  Because any mention of his Workers' Compensation claim will result in prejudice to Plaintiff that would substantially outweigh its probative value, Plaintiffs' motion *in limine* is granted in part.  Plaintiffs' motion is denied to the extent that it seeks to preclude or limit the cross examination of Mr. Ocasio regarding any alleged inconsistent statements.

In Pennsylvania, "[t]he collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer."  Nigra v. Walsh, 797 A.2d 353, 356 (Pa. Super. Ct. 2002) (quoting Johnson v. Beane, 664 A.2d 96, 100 (Pa. 1995)).  The purpose of the collateral source rule is "to avoid precluding a claimant from obtaining redress from his or her injury merely because coverage for the injury was provided by some collateral source, e.g. insurance."  Nigra, 797 A.2d at 356 (quoting Beechwoods Flying Serv., Inc. v. Al Hamilton Contracting Corp., 476 A.2d 350, 352 (Pa. 1984)) (additional citations omitted).

In Nigra, the defense attempted to ask the plaintiff questions about his application for Social Security benefits in connection with his injury in order to impeach him based on his inconsistent statements.  Nigra, 797 A.2d at 358.  Defense counsel failed to tailor the questions solely to the inconsistent statements.  Id.  The Court noted that "in some instances, the violation of the collateral source rule can affect the jury's deliberation and decision on the issue of liability."  Id. at 360; see also Lobalzo v. Varoli, 185 A.2d 557, 558, 561 (Pa. 1962) (applying the

collateral source rule to defense counsel's mentioning of Plaintiff's collection of Workmen's Compensation benefits and finding that "it [was] impossible to conjecture what influence the erroneously admitted evidence on workmen's compensation and unemployment compensation, as well as the misleading charge, had in bringing the jury to the conclusion it reached."); Kostar v. Pepsi-Cola Metro Bottling Co., 1998 U.S. Dist. LEXIS 19163, at *5-6 (E.D. Pa. Dec. 4, 1998) (precluding statements regarding Plaintiff's Workmen's Compensation claim, even though offered to prove ownership of the property on which Plaintiff was injured, because, although marginally probative, the probative value was substantially outweighed by the potential for prejudice under Federal Rule of Evidence 403).

The assertions in the C&R have little probative value in this litigation because, as noted above, the Court finds that Plaintiff has not advanced an inconsistent position in the present litigation. Moreover, any mention of Plaintiff's collection of Workers' Compensation benefits, or even mention of the claim or settlement in general terms, runs the risk of creating substantial prejudice to Plaintiff by suggesting to the jury that he need not recover against Defendants because he has already received payments from his employer. See Nigra, 797 A.2d at 360; Lobalzo, 185 A.2d at 558, 561; Kostar, 1998 U.S. Dist. LEXIS 19163, at *5-6. Because the risk of prejudice substantially outweighs any purported probative value of the evidence, any argument or evidence relating to the Workers' Compensation claims or proceeding must be precluded. See Fed. R. Evid. 403.

Defendants may, however, cross-examine Mr. Ocasio as to any inconsistent statements he has allegedly made. Counsel for Plaintiff expressed concern that such questioning would open the door to admission of the Workers' Compensation evidence. Tr. Oral Arg. 12/23/08, at 46. In

<u>Nigra</u>, the Court addressed the same issue with regards to a Social Security benefits claim:

> The alleged inconsistencies could have been easily established by asking [Plaintiff] about his applications to a government agency and whether his statements in those applications are true. [Plaintiff] could then be questioned regarding the specific instances of inconsistent statements contained in the applications as well as how these statements contradict or are inconsistent with [Plaintiff's] position and statements at trial.  This could have been done without revealing the governmental agency to which [Plaintiff] applied and without revealing the result of these applications.

<u>Nigra</u>, 797 A.2d at 359 n. 4.  In the present case, defense counsel should approach their cross-examination of Plaintiff in a similar manner so that it is not revealed which agency Plaintiff dealt with and what the result of those dealings were.  For these reasons, Plaintiffs' motion *in limine* is granted in part and denied in part.  The Court is confident that defense counsel can and will cross examine Mr. Ocasio consistent with the Court's ruling.

### 6. CONCLUSION

Because the issue decided by the WCJ in Plaintiff's suspension proceedings before the Workers' Compensation Court is not identical to the issues before this Court, the Court finds that collateral estoppel does not preclude relitigation of Plaintiff's injuries in this Court.  Therefore, partial summary judgment is not appropriate.  Further, because Plaintiff has not advanced a position in this Court which is inconsistent with that advanced in the C&R, he is not judicially estopped from claiming injuries not specifically mentioned in the C&R.  Finally, because the risk of prejudice that would result if evidence or arguments are introduced to the jury concerning Plaintiff's Workers' Compensation claim would substantially outweigh the probative value, such evidence is excluded from trial.  However, defense counsel is permitted to cross-examine Plaintiff with regards to any alleged inconsistent statements made under the parameters set forth in this Memorandum and Opinion .[7]   An appropriate order follows.

---

[7]The Court takes this opportunity to **strongly** encourage counsel to engage the services of an interpreter certified by the Administrative Office of the United States Courts should there be occasion to present any testimony in Spanish.  See 28 U.S.C. § 1827.